36 711
48 460
48 1239

No. 9170.

THE STATE EX REL. JOSEPH MENGE VS. N. H. RIGHTOR, JUDGE OF THE CIVIL DISTRICT COURT, ETC.

Prohibition is the proper remedy to arrest further proceedings in an appealable case where a suspensive appeal has been obtained from the judgment therein rendered and where, the surety being such as the law requires, the lower court assumes to order execution to issue.

Under the provisions of Act 24 of 1876, amending Article 575 of the Code of Practice, the surety must not only be good and solvent and reside within the jurisdiction of the court, but have property susceptible of being legally reached by the sheriff and subjected by him to the payment of the pressing creditor. A surety who carries all his property in his pocket is not such a surety as the law requires on judicial bonds furnished to suspend the execution of judgments. 28 Ann. 884, overruled.

The surety in this case is not a sufficient one and the order of appeal was properly rescinded.

# APPLICATION FOR PROHIBITION.

*Braughn, Buck & Dinkelspiel* and *W. O. Hart* for the Relator.

*James Wilkinson* and *Jos. H. Spearing* for the Respondent.

The opinion of the Court was delivered by

BERMUDEZ, C. J. This is an application for a prohibition. The relator complains that the district judge has rescinded an order for a suspensive appeal obtained by him on the ground that the surety in the bond furnished is not good and solvent, as the law requires.

The district judge returns, objecting that the present proceeding is not the proper one and that the surety is insufficient.

I.

It is now a well-settled rule of practice that when a suspensive appeal is set aside by a lower court on the ground that the surety does not possess the qualifications required by law—(when in truth such is not the fact)—the proper remedy is a prohibition.

It has been thus held, on the theory that, as the lower court is divested of jurisdiction the moment that a suspensive appeal is obtained and *perfected* by the giving of a sufficient bond with proper surety, that court cannot resume jurisdiction and execute the judgment sought to be suspended, *unless* the bond or the surety are in reality not such as the law requires.

The district judge claims that there has been made an innovation in the law by Act 24 of 1876, which provides that "the party furnishing the security shall prove his solvency, to the satisfaction of the court, whenever it is questioned by any party interested in the appeal."

The object of this formal legislation was to do away with an offensive jurisprudence of several years' standing, which had just previously established that the insufficiency of the surety had to be shown by the attacking party, *and* to fasten beyond cavil the burden of proof as to the sufficiency of the surety, on the principal in the bond. See 22 Ann. 592; 23 Ann. 714; 25 Ann. 616. The *onus* now rests on the appellant. See 35 Ann. 737.

No doubt inferior courts have always had, and still have, primarily, jurisdiction to test the sufficiency of the bond and of the surety, but their determination on that subject has never been considered beyond review by the appellate court. This, necessarily, should take place in as summary a manner as practicable, in furtherance of the ends of justice.

An attempt to execute a judgment from which a suspensive appeal has been taken and perfected, by the giving of such bond and surety as should be furnished, is, therefore, deemed a usurpation of authority, restrainable by prohibition.

## II.

The evidence shows that the surety owns a piece of vacant real estate, negotiable securities and his room furniture; that he is indebted in the sum of $1100—$452 whereof are secured by mortgage on the property and the balance by pledges worth between $700 and $800, assessed for taxes at $500 or $600; that the negotiable securities are worth $1000 and over, without stating how much.

The surety, on the stand, states that the notes are in his possession, and that it would be very difficult for the sheriff to seize them under execution, if he could seize them at all.

Conceding that the collaterals given to secure that portion of the surety's debt, which is not protected by the mortgage, are not in the surety's possession but in the creditor's, and that this indebtedness is as though it did not exist, because well guaranteed, it is clear that the only tangible property which the surety does not carry about his person or conceal is the real estate, which is encumbered to pay not only the capital but also the interest, and eventually the costs of suit in case of non-payment. Deducting the capital, $452, from the highest valuation put on the property, $800, the balance left would be sufficient to

cover the amount of the bond; but it is not prudent to accept the value of property assessed at $500 to be $800, and to suppose that the debt secured by mortgage, when demandable, will consist of its capital only, and will be promptly and fully paid. Should it not be so, and were legal proceedings required to enforce payment, the probability, not to say certainty, is, that the property would bring less than the valuation put on it by its owner, and that the margin between the mortgage debt and the price of sale will be absorbed by the costs of suit.

The other tangible property, the room furniture, which is not described in detail, and so insignificant that it is not even appraised, would no doubt, for the better part, be exempt from seizure under the provisions of Act 79 of 1876, sec. 1, amending Art. 644, C. P.

The only remaining property owned by the surety would then consist of the negotiable securities, which are in his possession and which he says the sheriff would not reach if he did not choose to let him.

It is true they are valued at $1000 and more, but are they that kind of property which a surety on a judicial bond should be required to own to be such surety as the law requires?

It is worthy of note that, as regards the qualifications of a surety on a bond for a suspensive appeal, the law has provided from the beginning to the present time, that such surety must be *good* and *solvent;* but that in 1876, the Legislature, amending Art. 575, C. P., has superadded that the surety should have property *liable* to seizure to the amount of the obligation.

So that the qualifications of a surety are, that he should be *good, solvent* and have *property liable to seizure.* Act 24, 1876, pp. 49, 50.

A surety must be *good;* that is, must be of full age, *compos mentis*, resident, qualified to serve; namely, competent to enter into the contract.

He must be *solvent;* which means, able to pay fully his debts and liabilities, including the amount of the bond.

He must have tangible property susceptible of seizure.

It cannot be assumed that when the Legislature undertook to amend the article by requiring that the surety should have property *liable to* seizure, it only meant property *not exempt from* seizure, for that would have been doing a vain thing, and for the reason that a surety who owned only property exempt from seizure never was deemed to be good and sufficient, as no execution could be legally levied on and satisfied from that sort of property.

What the Legislature intended to say, and did say, is, that the surety should have tangible property not exempt from seizure, *i. e.*, assets sus-

ceptible in nature of being easily reached by the sheriff and subjected by him, by sale, to the payment of the pressing creditor's claim.

We have taken pains to review the reported cases in which the question of sufficiency of a surety on a judicial bond has been considered, and we have failed to discover a single one in which a surety has ever been held to be, such as the law requires, who carried all his property in his pocket, a *locus* to which the sheriff's grasping hand cannot, without molestation and danger, usually find its way. Such surety, we think, is not that which the law demands shall be furnished for the safeguard of a creditor whose rights, recognized and liquidated by a judgment, are designed to be kept in abeyance by a suspensive appeal or otherwise.

Pothier says that, in judging of the solvency of the surety and the sufficiency of his property to answer for the debt, no regard is commonly paid to movable property, as that is easily alienated and is not followed by hypothecation. Nevertheless, if the debt is moderate and the engagement is not to continue long, merchants who have a well established business are admitted, although their fortune may consist in movables. Pothier Obl. p. 319 (390), quoting Busuage.

On the report of Article 2018 N. C. which is our Article 3042 R. C. C. Freilhard says that the object of suretyship is to make certain the execution of the obligation. Hence, the surety must have property, the discussion of which is not too painful. The facility of suing a debtor forms part of his solvency. See Chabot Rapport, 11 Feb. 1804; Laharz, 14 Feb.; Trielhard, 3 Feb.; Exposé du Corps Législatif.

It is true that in France the law requires the ownership of real estate, but the authorities referred to are anterior to the N. C. Pothier is the commentator from whom Art. R. C. C. 3042, is substantially taken.

From this stand-point, the decision made by the same Court (the effect of whose jurisprudence was abridged) in State *ex rel.* Fabre vs. Judge Fifth District Court, 28 Ann. 884, which comments on the act of 1876, as far as in conflict with the present views, must be considered as hereby overruled.

We here append a note of the authorities, or precedents, which we have re-examined on the question of form of proceeding and qualification of surety: 2 R. 551; 21 Ann. 43, 114, 364, 735; 22 A. 115; 23 Ann. 279, 491; 24 Ann. 316, 328; 27 Ann. 662, 685, 697; 34 Ann. 90.

We concur with the district judge, that the surety offered in this case is not such as the law requires, and that he was right in rescinding the order for a suspensive appeal.

It is, therefore, ordered that the restraining order herein made *in limine* be annulled and that the application for a prohibition be refused, with costs.

## DISSENTING OPINION.

FENNER, J.   I am perfectly satisfied that the surety in this case possessed all the qualifications required by law.  Negotiable securities, and even money, are undoubtedly, under the law of this State, "property liable to seizure."   No law exempts them from seizure, and this is the only test imposed by the law-maker.   State, etc. vs. Judge, 35 Ann. 737.

Under the definitions of the terms "good" and "solvent" given in the majority opinion, the motive of the Legislature in making the amendment of 1876 is sufficiently apparent.

The opinion says, "good" means "of full age, *compos mentis*, resident, qualified to serve, namely, competent to enter into the contract;" "solvent" means "able to pay fully his debts and liabilities, including the amount of the bond."

Obviously, a man might, under these definitions, be *good* and *solvent* without possessing "property liable to seizure to the amount of the obligation."

I am satisfied the amendment was made with reference to the enlarged homestead exemption which had been granted by the act of 1865, under which a man might possess as much as $2000 worth of property without owning a dollar, and yet be practically worthless as a surety, because his property would not be "liable to seizure."   Hence the necessity for and motive of the amendment.

The rule now adopted by the majority sets up the *habitat* of property as the test of sufficiency, and practically makes the surety himself the arbiter of his own competency.   If he desires to qualify, he has only, as he goes on the stand, to take his money or securities out of his pocket and hand them to a third person, and he is a good surety. .  If he wishes to be rejected, let him take his money and securities out of bank and put them in his pocket, and, *presto*, he is disqualified.   What practical purpose is accomplished by such a rule?   Though he place his property within reach of the sheriff on the day when he is called to qualify, he may put it in his pocket an hour afterwards and laugh defiance at the officer.

Indeed, whatever be the nature and amount of the property possessed by a surety, nothing prevents him from converting it into cash and pocketing it, to the discomfiture of legal process.

It is clear that the law-maker proceeded on the supposition that a man who is good for his debts and possesses "property liable to seizure" sufficient to pay them, will do so, and that he will not suffer his means to lie idle and profitless on his person in order to escape their payment.

"Straw bail" is proverbially odious; and if the Legislature desired to secure the absolute ultimate responsibility of judicial sureties, it might do so by requiring the possession of tangible property and securing the bond by mortgage or lien thereon.

The rule now adopted does not improve the ultimate responsibility of sureties, and it imposes, in my view, a new qualification which the Legislature has not required.

I, therefore, dissent.

POCHÉ, J.  I concur in the dissenting opinion of Mr. Justice Fenner.

Rehearing refused.